UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-00044-TWP-MJD |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Angela B.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). For the following reasons, the Court **remands** the decision of the Commissioner.

### I. PROCEDURAL BACKGROUND

On March 19, 2015, Angela B. protectively filed an application for DIB, alleging a disability onset date of October 9, 2012. (Filing No. 5-2 at 11.) Her application was initially denied on June 11, 2015, (Filing No. 5-4 at 2), and upon reconsideration on September 5, 2015, (Filing No. 5-4 at 9). Administrative Law Judge Dennis R. Kramer conducted a hearing on June 20, 2017, at which Angela B., represented by counsel, a medical expert ("ME"), Subramaniam Krishnamurthi, M.D., and a vocational expert ("VE"), appeared and testified. (Filing No. 5-2 at 33-80.) During the hearing, Angela B. amended her alleged onset date to the date that she attained

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

age 50.² (*See* Filing No. 5-2 at 79 (transcript reflecting amendment); Filing No. 5-5 at 19 (executed agreement to amend); *see also* Filing No. 5-5 at 2 (application listing birthdate).) Administrative Law Judge Dennis R. Kramer (the "hearing ALJ") subsequently became unavailable, so the case was reassigned to another Administrative Law Judge who determined that no further hearings were necessary based on the existing record. (Filing No. 5-2 at 11.) Administrative Law Judge Romona Scales (the "ALJ") issued a decision on February 21, 2018, concluding that Angela B. was not entitled to receive benefits. (Filing No. 5-2 at 8-25.) The Appeals Council denied review on November 9, 2018. (Filing No. 5-2 at 2.) On January 7, 2019, Angela B. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner denying her benefits. (Filing No. 1.)

## II. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the

---
² According to the regulations "[a]n individual attains a given age on the first moment of the day preceding the anniversary of [her] birth corresponding to such age." 20 C.F.R. § 404.2(c)(4). For privacy reasons, the Court declines to publish Angela B.'s specific birthdate.

2

claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For

the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

## III.     FACTUAL BACKGROUND

When Angela B. filed, she alleged she could no longer work because of varicose veins and blood flow issues in her left leg, cartilage damage in her left hip from a fall, a bulging disc in her lower back, a history of a cervical fusion, intermittent trouble with her arms and hands, work-induced asthma, and obstructive sleep apnea. (Filing No. 5-6 at 6.) She has completed two years of college earning a degree in automotive technology and has worked as a machine operator/technician and crane assembler/inspector.[3] (Filing No. 5-6 at 7-8.)

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Angela B. was not disabled. (Filing No. 5-2 at 21.)

---

[3] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

4

At step one, the ALJ found that Angela B. had not engaged in substantial gainful activity[4] since the amended alleged onset date. (Filing No. 5-2 at 13.) At step two, the ALJ found that Angela B. had "the following severe impairments: cervical degenerative disc disease status post an anterior cervical disc fusion (ACDF), the late effects of a very remote left knee chondroplasty, hypersensitivity pneumonitis, and an obese body habitus." (Filing No. 5-2 at 13 (citations omitted).) At step three, the ALJ found that Angela B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 5-2 at 14.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to frequent handling, fingering, feeling, reaching, pushing, and pulling with the upper extremities, and frequent use of foot controls with the lower extremities. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl but she can never climb ladders, ropes, or scaffolds. The claimant [can] tolerate frequently [sic] exposure to unprotected heights and/or dangerous moving machinery, and occasional exposure to pulmonary irritants such as fumes, odors, dusts, gases, and areas of poor ventilation, as well as humidity, wetness, and extreme temperatures. Lastly, she can tolerate loud noise levels.

(Filing No. 5-2 at 15.) At step four, considering Angela B.'s RFC and the VE's testimony, the ALJ concluded that Angela B. was incapable of performing any of her past relevant work as a crane inspector and CNC operator. (Filing No. 5-2 at 19.) At step five, considering Angela B.'s age[5], education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that Angela B. could have performed work through the date of the decision with jobs existing in

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

[5] The ALJ incorrectly found that Angela B. was age 49 on the amended alleged onset date. (*See* Filing No. 5-2 at 20; *see also supra* note 2 (Angela B. had attained age 50 on the amended alleged onset date).) However, the ALJ recognized that Angela B. attained age 50 and was considered an individual "closely approaching advanced age" during the period at issue; the ALJ applied the corresponding regulatory guidelines for that age category at step five. (*See* Filing No. 5-2 at 20; *see also* 20 C.F.R. § 404.1563(d) (closely approaching advanced age is defined as ages 50-54).)

significant numbers in the national economy in representative occupations, such as a cashier, router, and office helper. (Filing No. 5-2 at 20.)

## IV. DISCUSSION

Angela B. raises two assignments of error, that the ALJ improperly discredited the opinion of: (1) Angela B.'s treating physician, and (2) the SSA's own examining physician. The Court will address the issues in reverse order and to the extent necessary to resolve the appeal.

### A. Consultative Examiner's Opinion

On May 30, 2015, Angela B. attended a consultative examination, at the request of the Disability Determination Bureau, performed by Jonathan Kahn, M.D. ("Dr. Kahn"). (Filing No. 5-8 at 45-50.) Following the examination, Dr. Kahn provided a medical source statement assessing Angela B.'s work-related limitations, which follows in relevant part:

> In an 8[-]hour day, claimant can be expected to: [l]ift up to 10 lbs[.] frequently [for] 2.5 [to] 5 hours/day, carry up to 10 lbs[.] occasionally 2.5 hours/day, sit continuously[, ]more than 5 hours/day with frequent breaks or with regular breaks, stand occasionally 2.5 hours/day, walk occasionally 2.5 hours/day, or engage in other activities continuously[, ]more than 5 hours/day with frequent breaks or with regular breaks.

(Filing No. 5-8 at 48.) The hearing ALJ presented a hypothetical question to the VE describing the limitations assessed by Dr. Kahn. (Filing No. 5-2 at 75-76.) The VE testified that the physical limitations assessed by Dr. Kahn would limit an individual to the sedentary exertion level. (Filing No. 5-2 at 76.) However, the reference to the need for frequent breaks may preclude all work based on employers' limited tolerance for extra breaks in the competitive economy. (Filing No. 5-2 at 76-77.) Dr. Kahn's opinion is ambiguous as to whether Angela B. could perform work with the specified physical limitations needing only regular breaks or requiring additional breaks. On cross-examination by Angela B.'s hearing representative, the VE's opinion was further clarified

6

that even if the ambiguity concerning breaks was removed, Dr. Kahn's assessment would limit an individual to work at the sedentary exertion level. (Filing No. 5-2 at 77.)

According to the Medical-Vocational Guidelines, the VE's responses to hypothetical questions concerning transferable skills, and Angela B.'s complete vocational profile, if she were limited to sedentary exertion work, she would be considered "disabled" as of her amended alleged onset date. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2., Rule 201.14 (an individual closely approaching advanced age with high school or greater education that does not provide direct entry into skilled work and skilled or semiskilled work experience with skills not transferable).

The Seventh Circuit has held that the ALJ is not required to credit the opinion of a consultative source that examines the claimant at the request of the agency. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Id*. (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")).

The ALJ addressed Dr. Kahn's opinion and explained the weight it was given as follows:

> Perplexingly, this clinician opined that the claimant was limited to a modified range of sedentary work, however, having only seen the claimant once, and failing to consider the complete longitudinal record as the undersigned did, very little weight was afforded to this assessment as there was little objective evidence to support such deficits when her gait, range of movement, and functionality [were] all within normal limits as described above. Thus it appears that this clinician uncritically accepted many of the claimant's subjective reports, which is not an appropriate basis for limitations pursuant to SSR 96-4p.

7

([Filing No. 5-2 at 17](Filing No. 5-2 at 17).)

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). The duty to confront conflicting evidence includes observations of a consultative examiner that tend to support his assessment. *Spicher v. Berryhill*, 898 F.3d 754, 757-58 (7th Cir. 2018).

The ALJ's description in the written decision of the examination findings of Dr. Kahn was as follows:

> In connection with her application/appeal, the claimant underwent a physical consultative examination where despite her reiteration of symptomatology she was not exhibiting any painful distress on exam, nor did she have any respiratory complications. Moreover, her gait was normal, her ability to transfer unlimited, with the clinician noting no upper or lower extremity limitations. There was no edema, strength loss, or neurologic/focal deficits with the claimant's ability to heel/toe and tandem walk unrestricted; similarly, any cervical and knee range of movement limitations were slight and her straight leg raise test (SLR) unremarkable.

([Filing No. 5-2 at 17](Filing No. 5-2 at 17) (internal citations omitted).) However, the straight leg raising test to 60 degrees elicited bilateral hip pain. ([Filing No. 5-8 at 47](Filing No. 5-8 at 47).) The examination also revealed decreased range of motion in Angela B.'s bilateral hips. ([Filing No. 5-8 at 49](Filing No. 5-8 at 49).) Additionally, "[s]he had low back pain with bilateral hip flexion." ([Filing No. 5-8 at 47](Filing No. 5-8 at 47).) Concerning her left lower extremity, Dr. Kahn observed "prominent varicosities." ([Filing No. 5-8 at 46](Filing No. 5-8 at 46).) Neurologically, Dr. Kahn "[c]ould not elicit patellar and Achilles reflexes." *Id*. Regarding vascular functioning, Dr. Kahn

observed that Angela B. had diminished blood flow in the "dorsalis pedis arteries," and "[n]onpalpable posterior tibial pulses." (Filing No. 5-8 at 47.) The ALJ failed to confront the listed abnormal findings and observations.

The ALJ also gave more weight to the opinion of the ME that testified at the hearing based on his review of the medical record, despite the fact he had not examined Angela B. The ALJ "afforded great weight" to the ME's opinion. (Filing No. 5-2 at 14.)

However, in the record, the ME's opinion is internally conflicted. After the ME testified that he did not agree with any of the RFC assessments in the record, he offered to provide his own assessment of Angela B.'s functional limitations. (Filing No. 5-2 at 56.) While the Commissioner identifies Exhibit 13F of the administrative record as the ME's response to interrogatories, (Filing No. 17 at 9), the hearing transcript shows that the RFC form was completed—at the request of the hearing ALJ—by the ME contemporaneous with his hearing testimony, (Filing No. 5-2 at 56.) *See* Filing No. 5-2 at 59 (transcript showing that Exhibit 13F was admitted by the hearing ALJ without objection by Angela B.'s hearing representative). The ME's testimony was ambiguous to begin with:

> [Question from the hearing ALJ:] Okay. Why don't we do that, then? We'll offer for identification as 13-F, an RFC form. Let's talk about lifting and carrying, how would you mark that?
>
> [Answer from the ME:] Lifting 10 pounds frequently and occasionally 20 pounds.
>
> Q. So you're going to go with light? All right.
>
> A. Yes.
>
> Q. And then let's talk sit, stand and walk at one time, how would you mark that?
>
> A. The sitting a total three hours, stand and walk together four hours.
>
> Q. Oh, well, just in an eight-hour -- or at one time, though?

9

> A. In an eight-hour day, okay, at one time sit maybe two hours, stand and walk together a total of about two hours.
>
> Q. Two hours? Okay. Two hours, all right. How about an eight-hour workday, how would you mark that?
>
> A. Stand and walk together a total of six out of eight-hour day, sit six out of an eight-hour day.

([Filing No. 5-2 at 56-57](#).) When asked by the hearing ALJ to describe Angela B.'s ability to sit, stand, and walk at one time, the ME initially responded that Angela B. could sit a total of three hours and stand and walk a combined total of four hours. The ALJ asked for clarification if that was total in eight-hour day or at one time and the ME appeared to indicate that he meant total, before then giving his assessment of Angela B.'s abilities at one time. However, ultimately and without further explanation as to why, the ME then gave assessments of Angela B.'s capabilities at one time and total in eight-hour day and neither assessment matched the initial response of three hours sitting and four hours standing and walking. Exhibit 13F is also ambiguous, as it appears that the ME indicated that Angela B. could stand and walk a combined total of two hours during an eight-hour day. (*See* [Filing No. 5-9 at 104](#).)

For all the reasons above, remand is needed for further consideration of Dr. Kahn's opinion. The ALJ should confront the abnormal findings that tend to support the assessment and explain why they are rejected. Furthermore, if the ME's opinion is to be relied upon, additional clarification is needed as to this specific assessment. Consistent with the authorities detailed above, the ALJ must explain why the ME's opinion was favored over a supportive consultative examiner's opinion completed at the request of the agency. To that end, it may be helpful to have the ME comment on why he believes Dr. Kahn's assessment was not supported by his examination.

**B.      Treating Source Opinion**

Having found remand necessary as detailed above, the Court declines to provide an in-depth discussion of Angela B.'s treating source argument except to explain that the opinion was not deserving of controlling weight.

Based on the filing date of Angela B.'s application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Angela B.'s treating primary care physician, Wanda Estep, M.D., completed several medical source statements, including the one identified on appeal that was completed on October 29, 2015. (Filing No. 5-8 at 59.) Dr. Estep assessed, in part, that Angela B. could stand/walk less than 15 minutes at one time and less than 60 minutes total in an eight-hour workday and could sit 15 minutes at one time and 2 hours total in an eight-hour workday. *Id.* However, Angela B. testified that she could stand for one hour at a time and a total of one-third of an eight-hour workday. (Filing No. 5-2 at 73.) She also testified she could sit for one hour at a time for a total of one-third of an eight-hour workday. *Id.* The ALJ explained that the assessment was not consistent with the annual physical examination completed that same month by Dr. Estep. (Filing No. 5-2 at 17.) The examination was completely normal. (Filing No. 5-9 at 65.) Moreover, the assessment was inconsistent with the other opinions of record discussed above. Accordingly, the assessment was not deserving of controlling weight. As such, the Court does not remand with instructions to award disability based on the disabling treating opinion.

To the extent that Angela B. argues that Dr. Kahn's consultative opinion is entitled to controlling weight, (Filing No. 11 at 12), the regulations in effect based on the timing of the claim reserve controlling weight to treating opinions, *see* 20 C.F.R. § 404.1527(c). Further consideration of that opinion is necessary according to the instructions detailed above along with the Court's analysis of Angela B.'s corresponding assignment of error.

## V.     **CONCLUSION**

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/26/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Michael G. Myers
mgmyers10@sbcglobal.net

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov